Good morning. May I please the court, Jonathan Libby, appearing on behalf of Appellant Guy Savage. Mr. Libby? Your honors, Mr. Savage is entitled to resentencing for several reasons that we've studied in our brief. First of all, he was denied his right of allocution when the court failed to personally address him as required by Rule 32. Well, I read that transcript a couple of times, and it seems to me that with the attorney sitting right next to the defendant and the attorney saying, well, he's already provided seven pages of a statement. Isn't that enough? No. Why? Because the Supreme Court says it's not enough. The Supreme Court in Green back in 1961, both the plurality in that case and the dissent in that case both agreed that the core principle of allocution is to be personally addressed by the judge so that it's unequivocal, unambiguous, to make sure that the defendant knows that he has the right to speak on any matter he wants to speak on for purposes of mitigation. And what the court said in the case is one of the key factors is that a defendant often can speak with halting eloquence. Well, isn't that a little picky in light of page 31 of the record, it's the transcript of the sentencing hearing, line 24, when the court says, Mr. Mazzia, you wanted to go first, or would you like Mr. Savage to speak if he wants to speak? And that question was directed to counsel, not to the defendant. Right. And that's a violation of the rule. And Mr. Savage is sitting right next to her. That's right. But he doesn't have to then jump up and say, well, hang on a second. I mean, the fact is, it's the judge's responsibility here to address the defendant personally and not to the – this is one of the, you know, normally the court only converses with counsel during the proceeding. This is one of those times where the court has said this is a situation where the court must address the defendant personally, because the right of elocution is of such importance in the sentencing process. And so that was not done here. Well, now, what about his actual statement after the proceeding or toward the end of the proceeding when he rises to thank the judge? He did. After the sentencing proceeding was completed, he then indicated to the judge that he wanted to thank him for – Your Honor, I just want to tell you thank you very much for your input in my medical situation. I didn't want to say anything. I didn't want to say anything. I just want you to know I really, really appreciate your help. That doesn't sound to me like somebody who's been denied the right of elocution. Well, of course, the problem is Mr. Savage doesn't know he was denied the right of elocution because the court didn't address him and let him know he had the right to speak. So when he said – and also when he said, you know, I didn't want to say anything, you know, that can have a whole host of meanings. You know, I didn't want to bother you, you know, but I did want you to know I am very thankful. And, of course, the right of elocution is supposed to have an impact on the judge's sentencing decision. The court had already issued its sentence in this case. The sentencing proceeding was done. So the fact that he then addressed the court after the sentencing proceeding was over doesn't mean that it could have – that means it could not have had any effect on the sentence imposed. Suppose he says, Mr. Defendant, you have the right of elocution, and the attorney says we've discussed this and he's decided he doesn't want to exercise his right. Does that work or not? That's certainly a closer question. You know, the court's certainly supposed to try – what some courts have said is it has to be clear from the record that there was a personal colloquy between the court and the defendant. And in that situation that you mentioned, I'm not sure that that would necessarily qualify, but it certainly would be a closer question. But here, of course, that's not what happened. He did not address Mr. Savage, so the right of elocution was denied. Because he was denied his right of elocution under this Court's case law, which is essentially the standard is harmless error, almost with a presumption of prejudice, and it's automatic resentencing unless – well, it's automatic resentencing if there's any possibility that the sentence could have been lower. And, sir? The Third Circuit, in a very long and interesting opinion that traces the whole history of elocution by Judge Rendell, comes to the conclusion it's a plain error circumstance. In light of Puckett, the Supreme Court case, is it appropriate for us to look at this as plain error or still the harmless error approach? Well, I believe it's still harmless error. In Adams, what the Third Circuit was dealing with in that case is it was not clear what the standard was in the Third Circuit. And so it was essentially looking at it post-Green from 1961 what the standard should be. And what it said in Adams was, you know, we think that given the amount of time that has passed since Green that, in fact, plain error might be the most appropriate standard. I think the Third Circuit was wrong in Adams, but, I mean, the fact is this Court has made it very clear what the standard is in terms of, well, at least in recent case law, and that is if there's any possibility that there's a lower sentence, then resentencing has to be ordered. Well, how about a preliminary question? Why isn't the appeal waived with respect to anything to do with the sentencing process? Well, on that point, I would cite the Court to this Court's decision in United States v. Petty, which is discussed in the briefs, which dealt with a different part of Rule 32 that had to do with the Court's affirmative responsibility to verify that the defendant had read and discussed the pre-sentence report with the defendant. So it's one of the two affirmative duties there, along with the right of allocution and the personal colloquy. And what the Court said there was the appeal waiver can't apply to a situation like that, because the parties could not have anticipated that the Court would not have done its job, essentially. And since that's not a factor that the parties could have anticipated when they entered into this agreement, the appeal waiver cannot apply. That that's just common-sense reasoning. And I think that applies certainly with respect to the allocution issue here. The parties certainly could not have anticipated that the Court simply would not have done its job. Nor is there any evidence, from what you've said, that the defendant knew he had a right of allocation to waive. I'm sorry. The defendant did not know he had a personal right of allocation that could be waived by implication in a plea agreement. Well, that's exactly right. I mean, and he didn't know it at the time of the sentencing. He didn't know it at the time that he entered into the plea agreement, that there was this right of allocation. So he simply could not have known that he was giving up. Well, there's no evidence that he knew. That's correct. There's certainly nothing in the record that would suggest that. At the time of making a plea agreement, we wouldn't expect any defendant to assume that the Court, in sentencing on the plea, would not follow the standard rules on that, right? That's correct, Your Honor. Don't we have cases that talk in terms of, quote, strict compliance, close quotes, on Rule 32? And if so, how does that apply to this issue of, you know, directly asking him to speak versus what his lawyer said and so on? Well, I mean, there's, in this Court, this Court has issued some opinions that somewhat differ with respect to what the standard is. There's certainly a Ninth Circuit case that says that strict compliance with the allocution rule requires resentencing. And there are several other circuits that hold that strict compliance with the rule applies. And so it's our position that that's what it should be. This Court more recently has said that it is a harmless error standard. However, if there's any possibility of a reduced sentence, a lower sentence, then there must be a remand. And certainly, because there was certainly a possibility of a lower sentence here, then there must be a remand. And I don't know if I can use the balance if I may. You certainly may. Thank you. We'll hear from the Governor. Good morning. Jean-Claude André on behalf of the United States. Mr. André. Mr. André, this Defense Rule 32 challenges in this case are weird. In fact, defense counsel just said that, particularly with respect to the right of allocution, it's supposed to have an impact on the Court's sentencing determination. Those were his words from just a few minutes ago. In light of that, there can't be. Wait a minute. Did the plea, just so I understand, the plea agreement bound the district judge by the terms of the plea agreement? No, it did not. It was not a plea agreement. Okay, so what you're saying is that when I enter into a plea agreement, and I agree to certain ranges and the like, I am waiving, and there's a waiver, I am waiving compliance with how the judge arrives at the judge's decision on what the sentence is, and Rule 32, which is directed at influencing the judge to exercise the judge's discretion, is waived? Under the terms of the plea agreement in this case, yes. Because where is that pointed out in the plea agreement? The plea agreement in the appeal waiver section, it says the defendant waives his right and it's stated broadly, waives his right to appeal any sentence in the manner in which the sentence is determined, provided that the ultimate sentence satisfies a number of metrics. There's no dispute that those metrics were satisfied in this case. So when somebody puts the word manner in, we should understand that to mean that that's waiving every aspect of the procedural basis of the judge's sentencing. So that's a blanket waiver broadly written by the government. Well, broadly negotiated or broadly arrived at after negotiations between the parties. Where do we have evidence that the parties focused on manner and waiving Rule 32? This is a contract kind of case when we're talking plea agreements. I'm curious as to the government's position that says we're going to use these plea waivers to dispose of a defendant his opportunity to tell me anything he wants before I make a decision on whether or not to impose the sentence range that has been agreed to. The key, because this is a contract issue, of course, the Court will look at the plain language of the relevant provision and dispute. And here the language is broad. It says any manner in which the sentence is determined. Then you would have to look at the errors alleged by the defendant and figure out whether those errors go to the court's determination of the sentence. And in light of the purposes behind the two Rule 32 errors asserted here, they clearly were designed to go to the court's determination of the sentence. So it's not the government's position that every Rule 32 error or every single sentencing error would be barred by the appeal waiver language in this case. If that's the case and we look at extrinsic evidence, why did not the – were you the AUSA? No, I was not. Okay. Why did the AUSA not say, Your Honor, he has no right of allocution. He's waived it. Well, it is not that the defendant has waived his right of allocution. It's that the defendant has waived his right to appeal the court's failure to invite him to court. What he's waived is the right to appeal the allocution issue. Exactly. He certainly had the right to allocution at the trial. Absolutely. Well, let me ask you, maybe this is a question indirectly addressed to your opposing counsel, but I noticed that the plea agreement was countersigned by his attorney who was an assistant federal defender. And she says, I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing guideline provisions and the consequences of entering into this agreement. Is that something we should take into account in terms of interpreting this agreement? Well, yes, insofar as if the court is going to look and try to determine whether this appeal waiver was entered into knowingly and voluntarily, the court would be free, in fact, would be best suited to consider the fact that the evidence in the plea agreement itself and also in the Rule 11 transcript establishes that defendant was well-informed by his counsel and that his counsel agreed with it. Ultimately, though, as far as the issue as far as whether these Rule 32 error issues can proceed to this court, it is a contract issue. I mean, our position is that the language in the plea agreement appeal waiver is broad enough to encompass these particular. Judge Gould has a question. If I could please interject a question on this theory you're arguing. I guess I'm troubled by the idea that a waiver would cover something that couldn't be anticipated that happens afterwards. So let me give you a hypothetical. Let's say exactly the same waiver agreement as here, but when the judge comes out for sentencing, the judge says, I'm going to throw the book at you because I don't like the color of your skin, or I'm going to give you a very long sentence because you earn less than $20,000 a year. Same language. There was a waiver of any challenge on appeal to the manner in which the sentence was reached, and the judge has made clear that his manner of reaching the sentence is discriminatory. Is it the government's position in that hypothetical case that there would be a waiver of the appeal? And if not, what's the difference? Two responses, if I may. First, the government's position would be that in that situation, the appeal waiver would not apply because the sentence would be contrary to law and unconstitutional. And, in fact, this Court's decision in Bar-Medica recognized that if the Court's sentence is based on discriminatory animus, then the appeal waiver is negated because that sentence is just so inherently unlawful and unconstitutional. So that would be my first response to the hypothetical. The second response, insofar as, Judge Gould, you're concerned about things that might come up at sentencing that the defendant wouldn't have anticipated, I don't think that Petty's acknowledgment of that concern survives subsequent developments. In 2002, Justice Breyer, writing for the Court in Ruiz, acknowledged that a defendant can waive certain rights even though he doesn't have complete knowledge of how they might be vindicated or infringed in subsequent proceedings. This Court has said similar things in a case, for example, United States v. Johnson from 1995. So I guess my point is simply that a defendant can certainly give up rights even if he doesn't know that the Court is going to infringe them. The key is to look at the language of the waiver, and here the language is broad. It says any sentence in the manner in which the sentence is determined, and there's really no serious dispute that these two Rule 32 errors went to the Court's determination of the sentence as opposed to imposition of the sentence. And I guess that would bring me back, Judge Fischer, to one of your questions. It's not the government's position that every Rule 32 error would be waived by the language of this particular appeal waiver. If a judge, for example, sentenced a defendant in absentia, or if a judge entertained argument from counsel at the sentencing hearing and then said, thank you very much, I'll issue a written decision, instead of indicating the rule that the judge has to impose and pronounce sentence personally, those two sentencing errors would not be covered by this appeal waiver. Why? Because those go to the imposition of the sentence as opposed to the determination of the sentence. And in this case, as defense counsel acknowledges in his argument, and as the advisory committee notes underlying the two Rule 32 provisions at issue here make plain, these So how do you distinguish Petty, which gives the in absentia hypothetical, but also involved in that case the double jeopardy issue? Well, again, we would distinguish Petty insofar as Petty has an assumption that we no longer think is sound, which is that a defendant cannot waive the right to challenge certain errors that haven't come about yet. But secondly, I think the waiver in that case was meaningfully different from the waiver we have here. The waiver in Petty was expressly tied to the stipulation of the pardons. And the errors that the defendant was asserting were outside of that stipulation. That's not the case here. Here we have this broader waiver that says any manner in which the sentence is determined. I guess the third point would be there's a factual wrinkle with Petty. In Petty, the government also acknowledged that they may very well be back again. Under this Court's cases like Buchanan and Felix, that could be construed as the government's refusal to enforce the waiver. So in light of all those circumstances, we don't think Petty's controlling it. Finally, if I could address Judge O'Scallon's questions to my colleague earlier, and I don't mean to be swinging away from a lifeline, I'm prepared to concede that the district court did violate Rule 32 here and denied defendant his right of allocution. Our point, however, is that the error was not plain. Plain error is the proper standard, but under any of the three standings that this there was no prejudice to the defendant. And I think in particular, Judge O'Scallon, the transcript portions that you referenced, in addition, the seven-page letter submitted by defendant, which was essentially a written allocution, all established that the defendant had ample opportunities, both through counsel and through his own pen when he submitted that letter, to tell the court what was on his mind and make that plain mitigation that the allocution error is designed to vindicate. And as a result, there can't be prejudice. There can't be an impact on his substantial rights. Thank you, counsel. Thank you. Mr. Libby, you have a very short period of time. Your Honor, with respect to the waiver language, it's our position that the language was intended to mean how the court calculates the sentence in terms of the guideline calculations, et cetera, not whether the court followed the law in imposing the sentence and ultimately reaching the sentence that it imposes. To the extent there's any ambiguity in the language, this Court's case law is very clear that because of the government's superior bargaining power, that any ambiguity must resolve in favor of the defendant, and you can't consider the waiver provision. Judge Oscanlon, you had mentioned the defense counsel having countersigned the plea agreement. With respect to that, obviously we don't know if defense counsel considered the issue of allocution. I think defense counsel rightly assumed that. Well, it was a very broad, broad statement saying that she had advised him of all of his rights. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, the possible defenses of the sentencing guideline provisions and the consequences of any hindering of the agreement. Well, that's right. Of course, we don't know, however, if defense counsel gave the allocation issue any consideration whatsoever. You know, and if she did not consider that fact, then arguably that would be an effective assistance of counsel. Which is not in this case, certainly at this stage. Not at this stage. But, you know, since it's not known from the record what she may or may not have discussed with the defendant. She is your co-counsel, is she not? Well, she was probably. She is certainly a colleague of mine in my office. Yes, absolutely. Anything further? Unless the Court has any additional questions. No further questions? Oh, there is a question. Do you agree with the government's argument that subsequent Supreme Court precedent undermines the U.S. v. Petty? And, in other words, do we still have to apply Petty or not? Petty is still the law of the circuit. And I don't believe that it has been overruled in any way by the Supreme Court. No. Thanks. Thank you, counsel. The case just argued will be submitted. And the Court will adjourn.
judges: O'scannlain, Fisher, Gould